UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RUTH ANN JENKINSON and JOE JENKINSON, | ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Case No. 1:15-cv-00824-TWP-DKL <br> ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) <br> ) |
| Defendant. | ) |

### **ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Norfolk Southern Railway Co. ("Norfolk") ([Filing No. 65](#)), and a Motion for Leave to File Surreply filed by Plaintiffs Ruth Ann Jenkinson ("Mrs. Jenkinson") and her husband, Joe Jenkinson (collectively, "Plaintiffs"). ([Filing No. 82](#).) On October 21, 2013, at approximately 11:30 p.m., Mrs. Jenkinson struck the side of a stationary Norfolk train. Following the collision, Plaintiffs filed this negligence suit against Norfolk seeking compensatory damages. ([Filing No. 1](#); [Filing No. 59](#).) For the following reasons, the Court **GRANTS in part and DENIES in part** Norfolk's Motion for Summary Judgment and the Court **DENIES** Plaintiffs' Motion for Leave to File Surreply.

### **I.   BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Plaintiffs as the non-moving parties. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Factual and Procedural Background

Mrs. Jenkinson is an Indiana resident who previously worked at Community Hospital Anderson. On October 21, 2013, at approximately 11:00 p.m., Mrs. Jenkinson drove her normal route home from work—northbound on County Rd. 100W in Lafayette Township, Madison County, Indiana. At the time that Mrs. Jenkinson was driving home, a Norfolk freight train was stopped on a railroad grade crossing intersection at Madison Avenue ("the Crossing").[1] Norfolk's crew members, Andrew J. Bragg and Thomas E. Abrell, parked the train at the Crossing in order to conduct a mandatory air brake test. At approximately 11:30 p.m., Mrs. Jenkinson approached the Crossing and, because it was quiet and completely dark, Mrs. Jenkinson struck the side of a non-reflectorized Norfolk rail car. Mrs. Jenkinson suffered severe debilitating, permanent injuries that ended her career.

Thereafter, Plaintiffs filed a Complaint against Norfolk, alleging Norfolk acted with negligence by: 1) failing to train its crew on proper crossing safety; 2) parking the train across the Crossing; 3) failing to notify the law enforcement agency in order to control traffic; 4) failing to place flaggers to provide warning for each direction of traffic; 5) failing to have a uniformed law enforcement officer at the Crossing; 6) failing to have a crew member flag the train through the Crossing; 7) failing to provide an alternative route or detour; 8) failing to make the train visible to the public at night, specifically with streetlights; 9) failing to visibly warn motorists of the presence of the stopped train; 10) failing to warn motorists with certain lightning devices; and 11) failing to comply with 49 C.F.R. 232. ([Filing No. 59](#).) Norfolk moves for summary judgment as to all allegations, arguing that Plaintiffs' claims are preempted by the Federal Railroad Safety Act ("the Act"), as well as Indiana state law. ([Filing No. 66](#).)

---

[1] The Crossing's designated Department of Transportation ("DOT") number is 527797P.

**B.     The Act's Background and Legal Standard**

In 1970, Congress enacted the Act "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The Act directs the Secretary of Transportation ("the Secretary") to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103(a). The Act also tasks the Secretary with maintaining "a coordinated effort to develop and carry out solutions to the railroad grade crossing problem." 49 U.S.C. § 20134. The Act contains an express preemption clause that states:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106(a).

In 1973, Congress enacted the Highway Safety Act of 1973, which created the Federal Railway-Highway Crossing Program ("Crossing Program"). *See* 23 U.S.C. § 130. The Crossing Program makes federal funds available to the States to improve railway-highway crossings. To carry out its duty of improving railway-highway crossings, the Secretary promulgated several regulations, including 23 C.F.R. § 646.214. Section 646.214 addresses the adequacy of warning devices installed under the Crossing Program. This section specifically states:

> Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
>
> A. Multiple main line railroad tracks.
> B. Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
> C. High Speed train operation combined with limited sight distance at either single or multiple track crossings.

> D. A combination of high speeds and moderately high volumes of highway and railroad traffic.
> E. Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
> F. A diagnostic team recommends them.

23 C.F.R. § 646.214(b)(3).

> For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of [the Federal Highway Administration].

23 C.F.R. § 646.214(b)(4).

The Secretary also promulgated several other regulations to ensure that railroad conductors are qualified and that railroad employees receive training, instruction, education, qualifications, and supervision. *See* 49 C.F.R. §§ 240.1; 242.1.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007)

(citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III. DISCUSSION

The issues before the Court are, whether Norfolk is negligent for: 1) failing to have an officer, crew member, or any other visible or lightning devices stationed at the Crossing to warn motorists, 2) failing to provide training to its crew, 3) obstructing the Crossing without providing a detour, and 4) violating the federal brake test regulation under 49 C.F.R. 232. Norfolk requests summary judgment, arguing the Act preempts Plaintiffs' "failure to warn" and "failure to train" claims. Norfolk also contends that the obstruction claim fails as a matter of Indiana law, and that there is no basis for Plaintiffs' claim under 49 C.F.R. 232. The Court will address each issue in turn.

A.  **Norfolk's Motion for Summary Judgment ([Filing No. 65](Filing No. 65).)**

   1. **Detour and Alternative Route.**

As an initial matter, Norfolk argues that Plaintiffs failed to provide any statutory authority or case law establishing Norfolk's duty to provide motorists an escape route, detour, or any other alternative route. Norfolk contends that, as a railroad company, it does not have the ability or duty to provide these sorts of routes. The Court agrees that Plaintiffs have presented no evidence that Norfolk maintained the ability to provide detour routes and, accordingly, Norfolk's Motion on this issue is **granted**.

   2. **Federal Railroad Safety Act.**

The Court notes that whether Norfolk maintains a duty to provide additional warning to motorists—specifically, lightning devices, visible devices, or stationed officers and crew members—depends on whether federal funds were used to install crossbuck signs[2] at the Crossing. When applicable, the conditions listed in § 646.214(b)(3) and (b)(4) preempts state tort law. *See Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 352-53 (2000). Under the supremacy clause, when Congress manifests an intent that federal law occupy and control a certain field, States are precluded from interfering with the federal law. U.S. CONST. art. VI, cl. 2. Accordingly, the Act preempts a plaintiff from asserting state law tort claims regarding the inadequacy of warning signs and devices where federal funds were used to install the devices. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 671 (1993) (noting the Act pre-empts state tort law claims against a railroad, alleging that warning devices installed with federal funds are inadequate); *Shanklin*, 529 U.S. at 358 (same).

---

[2] Crossbuck signs are the X-shaped signs that say "RAILROAD CROSSING."

Norfolk argues that Plaintiffs' allegations regarding inadequate warnings are preempted by the Act because Indiana used federal funds to install reflectorized crossbuck signs at the Crossing in the late summer of 1981. Norfolk presents evidence that a Final Voucher was issued on September 9, 1991 to the State, establishing federal funds paid to Indiana for the purchase and installation of crossbuck signs, as well as notice that all crossbuck signs under the project were installed. ([Filing No. 66-2 at 58-61](#).) Norfolk also points to the declarations of William Barringer ("Barringer") and Milton Vermillion ("Vermillion"), who are former employers of the railway, when contending that the State used federal funds to install crossbuck signs at all passive grade crossings on the Indian Creek Secondary, including the Crossing. ([Filing No. 66-2 at 5](#); [Filing No. 66-3 at 2](#).)

In response, Plaintiffs argue that Norfolk failed to prove federal funds were actually used in the installation of crossbuck signs at the Crossing. Plaintiffs take issue with Barringer's and Vermillion's declarations,[3] and note, among other things, that the declarations and documents that Barringer and Vermillion rely on, including the Final Voucher, fail to mention the name of the Crossing or its DOT number. Plaintiffs also contend that, as of October 21, 2013, the Crossing bears physical distinctions that demonstrate the crossbuck signs in place on October 23, 2013, were not actually installed as part of the federal funding project in 1981. Specifically, in 1981, the Crossing had three tracks overlapping the main line—which would require crossbuck signs to be placed in specific locations—but, only one track existed in 2013. Plaintiffs argue, as such, there is a genuine issue of dispute regarding the installation of the crossbuck signs at the Crossing.

---

[3] In footnote 2 and Footnote 4 of their Response Brief, Plaintiffs move to strike the declarations of Carl Sanders—former Administrative Manager for the Federal Highway Administration ("FHWA")—as well as Barringer, asserting (among other things) that the declarants lack personal knowledge. ([Filing No. 76 at 8](#), 19.) The Court declines to consider or address Plaintiffs' motion to strike because a footnote in a response brief is not the proper vehicle to make such a motion. *See* S.D. Ind. Local Rule 7-1 ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court.").

7

Plaintiffs further assert that, even if federal funds were used, preemption does not apply because certain crossbuck signs at the Crossing were severely bent and not functioning as required by the Crossing Program.

The Court first notes that Plaintiffs' arguments regarding the functionality and replacement of crossbuck signs at the Crossing are without merit. "Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed…, is immaterial to the pre-emption question." *Shanklin*, 529 U.S. at 358. The Court, however, agrees that a genuine issue of material fact exists regarding whether federal funds were used to install crossbuck signs at the Crossing. The Court finds that the documents presented by Norfolk establish that federal funds were used to install crossbuck signs in Indiana at "various locations" ([Filing No. 66-2 at 57](Filing No. 66-2 at 57)), but the documents do not specifically mention the Crossing by name or its DOT number. Accordingly, summary judgment is **denied** on Norfolk's Motion regarding inadequate warnings.

### 3. Training

Norfolk next argues, because the Secretary issued comprehensive regulations covering the training and qualifications of railroad employees and conductors, the Act preempts Plaintiffs' claim that Norfolk negligently trained its crew. *See* 49 C.F.R. §§ 240.1, 242.1; *see also Gould v. Norfolk S. Corp.*, No. EV 96-248-C H/Y, 1998 WL 35881612, at *9 (S.D. Ind. Sept. 30, 1998) (granting summary judgment and holding "[a]ny claim that the train crew should[] have been provided additional training or instruction fails as a matter of law because of the preemptive effect of the [Act] and regulations promulgated thereto"); *Kohn v. Norfolk S. Corp.*, No. 3:96CV911 AS, 1998 WL 35881611, at *3 (N.D. Ind. Jan. 6, 1998) (holding "the assertions and claims with reference to allege negligence in training instruction and supervision of the train crew is preempted

by federal law [under] the Federal Railroad Safety Act of 1970"). Norfolk asserts that it promulgated written programs providing training instructions to its employees and complied with the preemptive regulations set forth in § 240.1, § 242.1, as well as § 217—which requires railroads to periodically conduct operational tests and inspections in accordance with a written program, to determine the extent of employees compliance with their operating rules, timetables, and timetable special instructions. *See* 49 C.F.R. § 217.9.

In response, Plaintiffs argue, despite Norfolk enacting practices, rules and procedures to protect the safety of its employees and filed these rules with the Federal Railroad Administration (the "Administration"), the Administration did not approve or adopt Norfolk's rules or operating practices. Plaintiffs also assert that there is ample evidence that Norfolk, not only failed to train its crew members, but also violated its operating rules, specifically Rule 123. Rule 123 establishes that "public crossings must not be obstructed unnecessarily." ([Filing No. 76-6 at 3](Filing No. 76-6 at 3).) Plaintiffs contend that had Norfolk's crew members followed Rule 123 and conducted the air brake test at the Rydman & Fox bean facility, where the train was originally assembled, the accident would have never occurred. Plaintiffs rely on *Zeagler*, when arguing that their "failure to train" claim is not preempted, because Norfolk did not train its crew members on Rule 123 and failed to implement certain other rules. *See Norfolk S. Ry. Co. v. Zeagler*, 293 Ga. 582, 600, (2013) (holding "[s]ince the regulations that Norfolk Southern cites under Part 217 do not cover the safety training that railroads should or should not provide for their conductors regarding grade-crossing accidents (or any other workplace hazard), the regulations cannot possibly preclude [Plaintiff's] failure-to-train claim").

Both parties agree that Norfolk established written programs to provide training instructions to its employees in compliance with § 217. There is also no dispute that § 217

9

expressly "preempts any State law, regulation, or order covering" a railroad's rules or operating practices. *See* 49 C.F.R. § 217.2. Accordingly, the Court **grants** Norfolk's Motion to the extent that Plaintiffs' "failure to train" claim asserts that Norfolk should have included more stringent training requirements. *See Gould*, 1998 WL 35881612, at *9 (holding "[a]ny claim that the train crew should [] have been provided additional training or instruction fails as a matter of law because of the preemptive effect of the [Act] and regulations promulgated thereto").

The Court, however, notes that § 217.2 carves out exceptions to the express preemption and "permits State tort actions … for …a party's violation of, or failure to comply with, its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the two Secretaries." *See* 49 C.F.R. § 217.2. Accordingly, the Court **denies** Norfolk's Motion with respect to Plaintiffs' contention that Norfolk failed to train its crew members on Rule 123 of Norfolk's own operating rules.

### 4. <u>Obstruction</u>

In the Second Amended Complaint, Plaintiffs allege that Norfolk acted with negligence when, among other things: 1) parking the train across the Crossing and creating a dangerous obstruction for motorists, and 2) failing to comply with Ind. Code § 8-6-7.5-1, which states that:

> [i]t shall be unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad-highway grade crossing for a period in excess of ten (10) minutes, except where such train, railroad car or engine cannot be moved by reason of circumstances over which the railroad corporation has no control.

In their Response Brief, Plaintiffs withdrew the negligence *per se* claim pursuant to § 8-6-7.5-1, and argued only that Norfolk is liable under Indiana's common law for improperly obstructing traffic and creating an ultra-hazardous crossing. Plaintiffs rely on *Central Indiana Ry. Co.*, when asserting the Crossing was ultra-hazardous because the Crossing lacked illumination,

10

warnings, and the dark train blocked Mrs. Jenkinson's path at 11:30 at night. *See Cent. Indiana Ry. Co. v. Anderson Banking Co.*, 252 Ind. 270, 275 (1969) (holding evidence that a railroad crossing was not illuminated and that two buildings obstructed the view of the crossing is "sufficient to allow the jury to determine that this crossing was dangerous to an extra-hazardous extent and to infer this knowledge to the railroad").

In reply, Norfolk argues that Plaintiffs' common law obstruction claim fails as a matter of law because warning devices at the Crossing were installed with federal funds. *See Randall v. Norfolk S. Ry. Co.*, 800 N.E.2d 951, 956 (Ind. Ct. App. 2003) (holding "the issue of whether a grade crossing has become 'extra hazardous' is irrelevant in determining a railroad's civil liability where, as in the instant case, warning devices have been installed with federal funds under a project approved by the FHWA").

Because the Court finds a genuine issue of material fact exists regarding whether federal funds were used to install crossbuck signs at the Crossing, Norfolk's Motion for summary judgment on this issue is **denied**.

5. **Federal Brake Test Regulation**

Norfolk also moves for summary judgment regarding Plaintiffs' claim that Norfolk violated 49 C.F.R. 232. There is no dispute that Norfolk's crew stationed the train at issue at the Crossing in order to conduct an air brake test. Plaintiffs allege that, as such, Norfolk failed to comply with 49 C.F.R. 232, which establishes that "[e]ach train and each car in the train shall receive a Class I brake test," at the "location where the train is originally assembled" and, among other places, the "location where the train is off air for a period of more than four hour." *See* 49 C.F.R. § 232.205(a)(1), (3). Plaintiffs also contend that Norfolk violated its own Rules for Equipment Operation and Handling. Specifically, Rule A-6, which mimics §232.205 ([Filing No.

11

[76-7 at 6](#)), as well as Rule C-100, which requires a freight car inspection at each location where freight cars are added to a train that has not been inspected. *See id*. at 11.

Norfolk argues that Plaintiffs' claim is meritless because Norfolk's crew did not violate the above rules and, even if the crew conducted the brake test elsewhere, the train still would have been stationed at the Crossing and the collision would have still occurred. *See Cowe by Cowe v. Forum Grp., Inc.*, 575 N.E.2d 630, 635 (Ind. 1991) (noting, in an action for negligence, a plaintiff must prove "that the [plaintiff's] harm would not have occurred 'but for' the defendant's conduct. The 'but for' analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm").

In response, Plaintiffs argue that the collision would not have occurred had Norfolk's crew performed the brake test at Rydman & Fox, pursuant to Rule 232. Plaintiffs assert that the brake inspection would have taken approximately four hours to complete and, as such, the train would not have left Rydman & Fox's station until approximately 1:30 a.m. the following day. Plaintiffs contend that a brake inspection at Rydman & Fox would have resulted in the Crossing being free from obstruction at the time of the collision.

The Court finds a genuine issue of material fact exists regarding whether conducting the brake test at the Crossing, rather than at the Rydman & Fox bean facility, amounts to the cause of Plaintiffs' injuries. Accordingly, summary judgment on this issue is **denied**.

**B.** **Plaintiffs' Motion for Leave to File Surreply ([Filing No. 82](#)).**

Plaintiffs move to file a surreply to Norfolk's Motion for Summary Judgment, contending that Norfolk included new supplemental evidence in its Reply Brief, specifically: 1) a Supplemental Declaration of William Barringer, Jr., and 2) three excerpts suggesting that only one

track, rather than three tracks, was present at the Crossing in 1981 when crossbuck signs were installed at various locations in Indiana.

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 U.S. Dist. LEXIS 29463, at *4 (S.D. Ind. Mar. 25, 2010). However, "new arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, 2015 U.S. Dist. LEXIS 23207, at *5 (S.D. Ind. Feb. 26, 2015) (citations omitted). "[T]his serves to prevent the nonmoving party from being sandbagged." *Id.* (citation omitted). Courts allow a surreply only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response. *See, e.g.*, *id.*; *Miller v. Polaris Labs., LLC*, 2014 U.S. Dist. LEXIS 18161 (S.D. Ind. Feb. 12, 2014).

Upon close review of the parties' briefing, the Court determines that Norfolk's Reply Brief did not inject new evidence, arguments, or issues into the Motion for Summary Judgment. Instead, the Reply Brief provided Norfolk's response to the arguments advanced by Plaintiffs in their Response Brief. The limited circumstances for allowing a surreply—to address new arguments or evidence raised in the reply brief—are not present in this case, and as a result, the Court **denies** the Plaintiffs' Motion for Leave to File Surreply.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendant Norfolk Southern Railway Co.'s Motion for Summary Judgment (Filing No. 65), and the Court

**DENIES** Plaintiffs' Motion for Leave to File Surreply ([Filing No. 82](Filing No. 82)). The Court concludes that a genuine issue of material fact remains regarding whether federal funds were used to install crossbuck signs at the Crossing and whether conducting the air brake test at the Crossing, rather than at Rydman & Fox bean facility, amounts to the cause of Plaintiffs' injuries. Accordingly, the issues remaining for trial are:

1) whether federal funds were used to install crossbuck signs at the Crossing;
2) whether Norfolk acted negligently when failing to train its crew members on Rule 123 of Norfolk's operating rules; and
3) whether Norfolk acted negligently in conducting the brake test at the Crossing.

**SO ORDERED.**

Date: 4/11/2017

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jose M. Bautista
BAUTISTA LeROY LLC
jose@bautistaallen.com

Steven L. Groves
GROVES POWERS LLC
sgroves@grovespowers.com

Richard D. Hailey
RAMEY & HAILEY
rich@rameyandhaileylaw.com

Mark Robert Molter
STUART & BRANIGAN LLP
mrm@stuartlaw.com

David A. Locke
STUART & BRANIGIN LLP
dal@stuartlaw.com

John C. Duffey
STUART & BRANIGIN LLP
jcd@stuartlaw.com