# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| RUTH ANN JENKINSON and JOE JENKINSON, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 1:15-cv-00824-TWP-MPB ) |
| NORFOLK SOUTHERN RAILWAY COMPANY | ) ) |
| Defendant. | ) |

## ENTRY ON MOTIONS IN *LIMINE*

This matter is before the Court on Plaintiffs Ruth Ann Jenkinson's ("Mrs. Jenkinson") and Joe Jenkinson's ("Mr. Jenkinson") (collectively, "Plaintiffs") Motion in *Limine* (Filing No. 95), and Defendant Norfolk Southern Railway Company's ("Norfolk") Motions in *Limine* (Filing No. 98), to exclude certain evidence and testimony at trial. For the following reasons, Plaintiffs' Motion in *Limine* is **granted in part and denied in part**, and Norfolk's Motions in *Limine* are **granted in part and denied in part**.

## I. BACKGROUND

Mrs. Jenkinson is an Indiana resident who previously worked at Community Hospital Anderson. On October 21, 2013, at approximately 11:00 p.m., Mrs. Jenkinson drove her normal route home from work—northbound on County Rd. 100W in Lafayette Township, Madison County, Indiana. At the time that Mrs. Jenkinson was driving home, a Norfolk freight train was stopped on a railroad grade crossing intersection at Madison Avenue ("the Crossing"). Norfolk's crew members, Andrew J. Bragg and Thomas E. Abrell, parked the train at the Crossing in order to conduct a mandatory air brake test. At approximately 11:30 p.m., Mrs. Jenkinson approached

the Crossing and, because it was quiet and completely dark, Mrs. Jenkinson struck the side of a non-reflectorized Norfolk rail car.

Following summary judgment, the issues remaining for trial are: 1) whether federal funds were used to install crossbuck signs at the Crossing; 2) whether Norfolk acted negligently when failing to train its crew members on Rule 123 of Norfolk's operating rules; and 3) whether Norfolk acted negligently in conducting the brake test at the Crossing, rather than the Rydman & Fox bean facility ([Filing No. 104](Filing No. 104).)

In their Motion in *Limine*, Plaintiffs seek to prohibit Norfolk from introducing or eliciting evidence regarding thirty-five topics and Norfolk asks the Court to exclude evidence that falls within twelve specific categories.

## II.   LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## III.   DISCUSSION

The parties' respective requests for orders in *limine* to prohibit the introduction of certain testimony and evidence at trial are addressed below.

A.  **Plaintiffs' Motion in *Limine* (Filing No. 95).**

Plaintiffs request an order in *limine* on thirty-five topics. Norfolk filed a Response on April 12, 2017, opposing only fifteen of Plaintiffs' thirty-five Motions. ([Filing No. 111](Filing No. 111).) The Court will discuss each request in turn.

1.  **Any reference to Plaintiffs' Motion in *Limine*.**

Plaintiffs' unopposed request to prohibit any reference to its Motion in *Limine* in the presence of the jury, because such reference would be irrelevant and unfairly prejudicial, is **GRANTED**.

2.  **Any reference to benefits from a collateral source.**

Plaintiffs ask the Court to prohibit any reference to Plaintiffs' entitlement to any kind of benefits from a collateral source, based on Indiana Code § 34-4-36-2. The Court notes that Ind. Code § 34-4-36-2 has been repealed and replaced with Ind. Code § 34-44-1-2, effective March 12, 2010. Section 34-44-1-2 explains:

> [i]n a personal injury or wrongful death action, the court shall allow the admission into evidence of …proof of collateral source payments other than: (A) payments of life insurance or other death benefits; (B) insurance benefits that the plaintiff or members of the plaintiff's family have paid for directly; or (C) payments made by: (i) the state or the United States; or (ii) any agency, instrumentality, or subdivision of the state or the United States…that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought.

Ind. Code Ann. § 34-44-1-2. Plaintiffs' unopposed request to exclude any reference to benefits from a collateral source **is GRANTED**.

3.  **Any reference to Norfolk being personally liable for damages.**

Plaintiffs' unopposed request to prohibit any reference to Norfolk being personally liable to pay any judgment rendered in this case, is **GRANTED.**

**4. Any reference to photographs, articles, or demonstrative video tapes without tendering such exhibits to the Court and Plaintiffs' counsel outside the presence of the jury.**

Plaintiffs ask the Court to exclude any photographs, articles, or demonstrative video tapes unless Norfolk tenders such exhibits to the Court and Plaintiffs' counsel outside the presence of the jury. The parties should have already disclosed all exhibits according to the Case Management Plan and pre-trial orders. In addition, the parties are required to submit exhibit binders and other exchanges such that all photographs, articles, or demonstrative video tapes will be disclosed prior to trial. The Court **DENIES** Plaintiffs' request for additional disclosures because Plaintiffs have presented no evidentiary basis for such a requirement.

**5. Any reference to Plaintiffs' prior claims for personal injury, workers' compensation, or other benefits.**

Plaintiffs' unopposed request to prohibit any reference to prior claims made by Plaintiffs for personal injury, workers' compensation, or medical benefits of any kind, because such reference would be irrelevant and unfairly prejudicial, is **GRANTED**.

**6. Any reference to pre-judgment interest.**

Plaintiffs' unopposed request to prohibit any reference to pre-judgment interest that will be added to any actual damages awarded in this case is **GRANTED.**

**7. Any reference to Plaintiffs dismissing previously alleged claims against previously named defendants, including The Andersons, Inc.**

Plaintiffs rely on Rules 401, 402 and 403 when requesting the Court to prohibit any reference to previously dismissed claims against previously named defendants, including The Andersons, Inc. In response, Norfolk notes that Plaintiffs dismissed The Andersons, Inc. after determining that a "reflectorization" claim is preempted by federal law, and it does not intend to

offer such evidence unless Plaintiffs open the door. Accordingly, Plaintiffs' Motion in *Limine* is **GRANTED.**

   8.   **Any reference to Plaintiffs' jury consultant.**

Plaintiffs' unopposed request to prohibit any reference to Plaintiffs hiring of a jury consultant is **GRANTED.**

   9.   **Any testimony from Carl Sanders or any other expert witness who was not disclosed during discovery.**

Plaintiffs ask the Court to exclude any expert witness who was not disclosed during discovery, specifically, Carl Sanders, because Norfolk failed to produce Sanders for deposition. In response, Norfolk argues that Plaintiffs were aware of Sanders and could have subpoenaed Sanders at any time after he filed his Declaration on September 16, 2016.

The Court is unable to determine from Plaintiffs' Motion in *Limine* and Norfolk's Response, whether there are grounds for excluding Sanders. The parties should be prepared to discuss this issue at the final pretrial conference. For this reason, the Court takes this issue of Plaintiffs' Motion in *Limine* **under advisement**.

   10.  **Any testimony from fact witnesses who were not disclosed during discovery.**

Plaintiffs' unopposed request to prohibit Norfolk from calling any fact witnesses who were not disclosed during the course of discovery is **GRANTED.** This motion applies to both parties.

   11.  **Any testimony that Norfolk did not have a responsibility or obligation to warn motorists of an extra-hazardous crossing.**

Plaintiffs ask the Court to prohibit testimony that Norfolk did not have a responsibility to warn motorists of an extra-hazardous crossing. The Court first notes that it concluded as a matter of law that the Federal Railroad Safety Act ("the Act") preempts a plaintiff from asserting state law tort claims regarding the inadequacy of warning signs and devices <u>where federal funds were</u>

used to install the devices. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 671 (1993) (noting the Act preempts state tort law claims against a railroad, alleging that warning devices installed with federal funds are inadequate); *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 358 (2000). The Court also concluded that a material issue of fact remains regarding whether federal funds were used to install crossbuck signs at the Crossing. Accordingly, the Court **DENIES** Plaintiffs' Motion in *Limine* regarding this evidence.

The Court notes that Plaintiffs' desire, however, can be advanced through a jury instruction. For example, the jury can be instructed that if they find federal funds were not used to install crossbuck signs at the Crossing, then Norfolk had the obligation to warn motorists of an extra-hazardous crossing.

**12. Any testimony that Norfolk had no duty to evaluate and determine the adequacy of the warning devices at the Crossing.**

Plaintiffs ask the Court to prohibit testimony that Norfolk did not have a duty to evaluate and determine the adequacy of the warning devices at the Crossing. The Court again notes that a material issue of fact remains regarding whether federal funds were used to install crossbuck signs at the Crossing and, if so, the Act preempts Plaintiffs from asserting state law tort claims against Norfolk regarding the inadequacy of warning signs and devices. *See Easterwood*, 507 U.S. at 671 (noting the Act preempts state tort law claims against a railroad, alleging that warning devices installed with federal funds are inadequate); *Shanklin*, 529 U.S. at 358. Because a material issue of fact remains regarding whether federal funds were used to install crossbuck signs at the Crossing, the Court **DENIES** Plaintiffs' Motion in *Limine* regarding this evidence. Again, Plaintiffs' desire can be advanced through an instruction to the jury.

**13. Any testimony that Norfolk had no duty to maintain or install adequate warning devices.**

Plaintiffs ask the Court to prohibit testimony that Norfolk did not have a duty to maintain and install adequate warning devices at the Crossing. For the reasons listed above, the Court **DENIES** Plaintiffs' Motion in *Limine* regarding this evidence.

**14. Any testimony that it is the Government's duty to maintain and install adequate warning devices.**

Plaintiffs ask the Court to prohibit testimony that it is the Government's duty to maintain and install adequate warning devices at the Crossing. The Court **DENIES** Plaintiffs' Motion in *Limine* regarding the duty because a material issue of fact remains regarding whether federal funds were used to install crossbuck signs at the Crossing. *See Easterwood*, 507 U.S. at 671; *Shanklin*, 529 U.S. at 358.

**15. Any testimony that it is the Government's duty to evaluate and determine whether warning devices should be upgraded or other safety measures should be implemented.**

Plaintiffs ask the Court to prohibit testimony that it is the Government's duty to evaluate and determine the adequacy of the warning devices at the Crossing. For the reasons stated above, the Court again **DENIES** Plaintiffs' Motion in *Limine* regarding this evidence.

**16. Any testimony that Norfolk is not permitted to install flashing lights, gates or street lights at the Crossing.**

Plaintiffs seek to prohibit testimony that Norfolk is not permitted to install flashing lights, gates or street lights at the Crossing. In response, Norfolk contends that it cannot unilaterally install flashing lights and gates without State approval and opposes Plaintiffs' Motion to the extent that Plaintiffs seek to bar such testimony. Accordingly, the Court **DENIES** Plaintiffs' Motion in *Limine* to the extent that Plaintiffs seek to bar evidence that State approval is required before installing flashing lights and gates.

**17.  Any testimony that street lights are "warning devices" subject to federal preemption.**

Plaintiffs ask the Court to prohibit testimony that street lights are "warning devices" subject to federal preemption, because there is no basis in law or fact.  In response, Norfolk argues that under the Act, "passive warning devices means those types of traffic control devices, including signs, markings and other devices, located at or in advance of grade crossings to *indicate the presence of a crossing* but which do not change aspect upon the approach or presence of a train." *See* 23 C.F.R. § 646.204 (emphasis added).  Norfolk contends that the purpose of street lights would be to illuminate a crossing in order to indicate the presence of a train.  Neither party has presented evidence specifically stating whether street lights are indeed "warning devices" under the Act.  Without such evidence, the Court cannot determine the admissibility of this evidence.  Accordingly, the Court **DENIES** Plaintiffs' request for a motion in *limine.*

**18.  Any testimony that the State of Indiana never determined whether the Crossing was extra-hazardous.**

Plaintiffs' unopposed motion to prohibit testimony that Indiana never determined whether the Crossing was extra-hazardous is **GRANTED.**

**19.  Any use of "Operation Lifesavers".**

Plaintiffs' unopposed motion to prohibit any reference to or use of "Operation Lifesavers," which Plaintiffs describe as a routine educational media blitz to educate the citizens prior to or during trial is **GRANTED.**

**20.  Any attempt to tamper with the jury pool by using advertisements to suggest drivers are responsible for crossing collisions.**

Plaintiffs' unopposed motion to prohibit any attempt to tamper with the jury pool by using advertisements that suggest drivers are responsible for crossing collisions is **GRANTED.**

**21.** **Any reference to charges or citations issued by police for past collisions at the Crossing.**

Plaintiffs' unopposed motion to prohibit any reference to charges or citations issued by police officers as a result of past collisions at the Crossing is **GRANTED.**

**22.** **Any evidence or testimony lacking personal knowledge.**

Plaintiffs ask the Court to prohibit testimony from any witness that lacks personal knowledge, except the parties' designated corporate representative. Plaintiffs contend that such testimony would confuse and mislead the jury, as well as unduly prejudice Plaintiffs. While speculative testimony will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of the litigation to place a blanket prohibition on a broad category of testimony without the context of specific questions actually being asked during trial. For this reason, the Court **DENIES** this section of Plaintiffs' Motion in *Limine*.

**23.** **Any reference to Plaintiffs' failure to call a witness to testify.**

Plaintiffs seek to prohibit any reference to Plaintiffs failing to call a witness to testify that is equally available to both parties. Norfolk does not oppose this request in *limine*. Accordingly, the Court **GRANTS** Plaintiffs' Motion in *Limine* regarding this evidence.

**24.** **Any testimony from police officers regarding the cause of the collision.**

Plaintiffs' unopposed motion to exclude testimony from police officers regarding the cause or contributing cause of the collision is **GRANTED.**

**25.** **Any reference to the date Plaintiffs hired lawyers in this matter.**

Plaintiffs' unopposed motion to prohibit any reference to the date that Plaintiffs hired an attorney in this matter is **GRANTED.**

**26. <u>Any reference to a verdict in favor of Plaintiffs being tax-free.</u>**

Plaintiffs' unopposed motion to prohibit any reference to the fact that some or all of any verdict rendered in favor of Plaintiffs will be tax free is **GRANTED**.

**27. <u>Any suggestion that Plaintiffs bear the sole burden in this case.</u>**

Plaintiffs' unopposed motion to prohibit any suggestion that Plaintiffs bear the sole burden in this case because such suggestion would be a misstatement of the law is **GRANTED.**

**28. <u>Any reference to crossbuck signs having a similar effect as "yield" signs.</u>**

Plaintiffs rely on Ind. Code § 9-21-8-39 when requesting the Court to exclude any testimony or suggestion that crossbuck signs have a similar effect as "yield" signs or that a motorist must stop and yield to trains at grade crossings. Section 9-21-8-39 explains:

> Whenever a person who drives a vehicle approaches a railroad grade crossing, the person *shall stop* within fifty (50) feet but not less than fifteen (15) feet from the nearest track of the railroad and *may not proceed until the person can do so safely* under the following circumstances:
> …
> (4)When an approaching train or other on-track equipment is plainly visible and is in hazardous proximity to the crossing.

Ind. Code § 9-21-8-39 (emphasis added).

The Court concludes that Plaintiffs' reliance on § 9-21-8-39 is misplaced because, contrary to Plaintiffs' argument, the statute supports the contention that—similar to a yield sign—motorists must stop and yield to a train or other plainly visible on-track equipment within proximity to the Crossing. Because no other evidentiary support has been provided for excluding such reference, the Court **DENIES** Plaintiffs' request.

**29. <u>Any layperson testimony regarding the legal duty to drive at all times with high beams</u>.**

Plaintiffs argue that the Court should exclude any lay testimony regarding the legal duties of a motorist, including the duty to drive at all times with high beams, because such testimony is

improper pursuant to Rules 602, 701, and 702. The Court concludes, and Norfolk does not dispute, that lay witness testimony regarding the legal duties of a motorist should be excluded at trial. Accordingly, the Court **GRANTS** Plaintiffs' Motion in *Limine* regarding this evidence.

30. **Any reference to evidence that was not identified to Plaintiffs during discovery**.

Plaintiffs' unopposed motion to exclude any reference to documents, materials, testimony, exhibits or other evidence that should have been, but was not produced to Plaintiffs during discovery, including any testimony or statements taken by railroad employees after the collision is **GRANTED.**

31. **Any accusation that Plaintiffs' expert witnesses, consultants or attorneys trespassed on the railroad's right-of-way.**

Plaintiffs' unopposed motion to prohibit any testimony that Plaintiffs' expert witnesses, consultants, and or attorneys "trespassed" on the railroad's right-of-way, because such testimony has no relevance to the issues before the Court, is **GRANTED.**

32. **Any reference to Mrs. Jenkinson's prior use of alcohol or controlled substances, or any suggestion that Mrs. Jenkinson was impaired at the time of the collision.**

Plaintiffs' unopposed motion to prohibit testimony regarding Mrs. Jenkinson's prior use of alcohol or controlled substances, as well as any suggestion that Mrs. Jenkinson was intoxicated or impaired at the time of the collision, is **GRANTED.**

33. **Any reference to Mrs. Jenkinson's familiarity with the Crossing prior to the collision.**

Plaintiffs request the Court to prohibit any testimony that Mrs. Jenkinson was familiar with the Crossing prior to the collision because such testimony would be speculative or would require reliance on hearsay. While speculation or inadmissible hearsay will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of the

litigation to prohibit this testimony without the context of specific questions actually being asked during trial. Additionally, Norfolk presents evidence that Mrs. Jenkinson, herself, previously testified that she was familiar with the Crossing prior to the collision. For these reasons, the Court **DENIES** Plaintiffs' Motion in *Limine* regarding this evidence.

### 34. Any reference to Mrs. Jenkinson "hurrying" at the time of the collision.

Plaintiffs' unopposed motion to exclude any reference that Mrs. Jenkinson was "hurrying" at the time of the collision is **GRANTED.**

### 35. Any testimony that a railroad has no duty under any circumstances to warn the public of the presence of a train on a crossing.

Plaintiffs ask the Court to prohibit testimony that a railroad has no duty under any circumstances to warn motorists and the public of the presence of a train on a crossing. Plaintiffs rely on *Central Indiana Ry. Co.*, when asserting that it is for a jury to determine whether the Crossing was ultra-hazardous and to infer such knowledge to the railroad. *See Cent. Indiana Ry. Co. v. Anderson Banking Co.*, 252 Ind. 270, 275 (1969) (holding evidence that a railroad crossing was not illuminated and that two buildings obstructed the view of the crossing is "sufficient to allow the jury to determine that this crossing was dangerous to an extra-hazardous extent and to infer this knowledge to the railroad").

In response, Norfolk argues that the remedy for an "extra-hazardous" crossing may be to install different or additional warning devices, however, "the issue of whether a grade crossing has become 'extra hazardous' is irrelevant in determining a railroad's civil liability where, as in the instant case, warning devices have been installed with federal funds under a project approved by the FHWA." *See Randall v. Norfolk S. Ry. Co.*, 800 N.E.2d 951, 956 (Ind. Ct. App. 2003).

As previously stated, because the Court found as a matter of law that a genuine issue of material fact exists regarding whether federal funds were used to install crossbuck signs at the

Crossing and therefore, a motion in *limine* is not appropriate. Instead, the jury can be appropriately instructed that if they find that federal funds were not used to install crossbuck signs at the Crossing, then a railroad has the obligation to warn motorists and the public of an extra-hazardous crossing.

**B.      Norfolk's Motions in *Limine* (Filing No. 98).**

Norfolk requests an order in *limine* on twelve topics. Plaintiffs filed a Response in Opposition to Norfolk's Motion in *Limine* on April 12, 2017, opposing only eight of Norfolk's twelve requests. ([Filing No. 105](#).) The Court will discuss each request in turn.

**1.      Any "Golden Rule" arguments.**

Norfolk asks the Court to prohibit Plaintiffs and Plaintiffs' counsel from asking the jury to stand in Plaintiffs' shoes—a practice known as the "Golden Rule" argument. "[A] 'Golden Rule' appeal in which the jury is asked to put itself in the defendant's position is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (citation and quotation marks omitted); *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982) (Golden Rule remark is "clearly improper"). The Court **GRANTS** the motion in *limine* and the parties are to refrain from asking the jury to stand in either parties' shoes.

**2.      Any reference to Norfolk's worth or relative wealth.**

Norfolk's unopposed motion to exclude any testimony or reference to Norfolk's wealth or financial resources is **GRANTED**. *See Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) (holding reference to the comparative size and financial wealth of the parties was improper). "Courts have held that appealing to the sympathy of jurors through references to

the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal. If the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception." *Id.* (quoting *Draper v. Airco, Inc.*, 580 F.2d 91 (3d Cir.1978).

3. **<u>Any reference to Norfolk's objections to Plaintiffs' discovery requests.</u>**

Norfolk's unopposed motion to exclude testimony that Norfolk objects to some of Plaintiffs' discovery request because such testimony is irrelevant to the issues remaining for the Court is **GRANTED.**

4. **<u>Any testimony that the Crossing could have been made "safer".</u>**

Norfolk asks the Court to exclude testimony that the Crossing could have been made safer or improved, because such testimony is irrelevant and likely to mislead or confuse the jury. *See Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987) (holding the "district court acted properly in sustaining the Railroad's objection to [Plaintiff's] testimony concerning a safer, alternative way to install gears in railroad cars" because "the question the jury had to decide was whether the Railroad … exercised reasonable care for the safety of [Plaintiff], not whether the Railroad could have employed a safer method for installing gears").

In response, Plaintiffs contend that if a jury reaches the conclusion that the Crossing was extra-hazardous then the jury will be asked to determine if Norfolk used reasonable care. As previously stated, because the Court found as a matter of law that a genuine issue of material fact exists regarding whether federal funds were used to install crossbuck signs at the Crossing, Norfolk's Motion in *Limine* regarding this evidence is **DENIED**. *See Easterwood*, 507 U.S. at 671 (noting the Act preempts state tort law claims against a railroad, alleging that warning devices installed with federal funds are inadequate); *Shanklin*, 529 U.S. at 358. Again, the jury can be

instructed that if they find federal funds were used to install crossbuck signs at the Crossing, then a railroad does not have the obligation to improve or make the Crossing safer.

### 5. Any lay witness testimony regarding the "dangerousness" of trains occupying the Crossing.

Norfolk asks the Court to exclude any lay opinions that the Crossing was dangerous because such evidence is irrelevant and will not assist the jury in determining whether a motorist exercising due care could safely travel over the Crossing. Norfolk also points to Rule 402 and 403 when arguing that such testimony is prejudicial and would force the jury to conclude that Norfolk should be held liable for allowing a "dangerous" crossing to exist.

The Court notes that one of the issues remaining for trial is whether federal funds were used to install crossbuck signs at the Crossing and, if so, whether Norfolk acted with negligence when failing to provide additional warnings and when parking the train across the Crossing—causing it to be ultra-hazardous. Laypersons may testify to their personal observations. Accordingly, the Court **DENIES** Norfolk's request to prohibit lay testimony references to the Crossing being "dangerous."

### 6. Any reference to prior, unrelated accidents.

Norfolk asks the Court to exclude any reference to prior, unrelated accidents. Over the course of approximately thirty-one years, six accidents occurred at the Crossing. Norfolk argues that such evidence, as well as any other grade crossing accidents involving Norfolk and its crew is irrelevant and too remote in time. In addition, Norfolk contends the prior accidents at the Crossing are distinguishable from the accident in this case because in the prior accidents the trains were traveling through the Crossing, rather than stationed at the Crossing.

Seventh Circuit "precedents recognize that other accidents are generally deemed admissible both to prove the existence of a defect or danger in a location or a product and to show

15

that the defendant had notice of the defect or danger, so long as the other accidents are 'substantially similar' to the accident at issue in the litigation." *Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004). In response, Plaintiffs contend that the six prior accidents at the Crossing are substantially similar because: 1) motorists drove below or at the speed limit; 2) there were no track signals; 3) there were no flashing light signals or automatic gates; 4) there were no street lights; 5) a train obstructed the track; and 6) motorists collided with the side of Norfolk's train.

The Court **DENIES** Norfolk's request to exclude references to prior accidents at the Crossing because, if federal funds were not used, such testimony is relevant to the issue of whether Norfolk is negligent for failing to provide additional warnings at the Crossing.

**7.     Any testimony that Norfolk left an "unreflectorized" railcar on the Crossing.**

For the reasons explained in the section above concerning the "dangerousness" of trains on the Crossing, the Court **DENIES** Norfolk's motion to exclude testimony that Norfolk left an "unreflectorized" railcar on the Crossing. If federal funds were not used, such testimony is relevant to the issue of whether Norfolk is negligent for failing to provide additional warnings at the Crossing.

**8.     Any reference to Mrs. Jenkinson having or being treated for PTSD.**

Norfolk asks the Court to exclude testimony alleging Mrs. Jenkinson suffers from Post-Traumatic Stress Disorder ("PTSD") because Plaintiffs failed to properly disclose Dr. Pat Savage, Mrs. Jenkinson's social worker, or any other witness who is competent to diagnose PTSD pursuant to Rule 702. Norfolk also points to Plaintiffs' medical expert, Dr. Robert Gregori's, testimony that it is less likely Mrs. Jenkinson suffers from PTSD.

In response, Plaintiffs argue that they disclosed Dr. Pat Savage in "Plaintiffs' Supplemental Disclosures" on March 22, 2016, well before the discovery deadline. If Dr. Pat Savage was

properly disclosed, such testimony would be proper. In addition, the Court has found that Dr. Gregori is qualified to testify regarding his medical opinions. For these reasons, the Court **DENIES** Norfolk's request to exclude reference to Mrs. Jenkinson having or being treated for PTSD.

9. **Any testimony that Norfolk violated Indiana's "Blocked Crossing" statute.**

Norfolk seeks to exclude testimony that it violated Indiana's "Blocked Crossing" statute. The Court concludes, and Plaintiffs do not dispute, that any evidence regarding Norfolk violating Indiana's "Blocked Crossing" statute should be excluded at trial. Accordingly, Norfolk's Motion in *Limine* is **GRANTED.**

10. **Any testimony that the "sight distance" was obstructed in the four quadrants of the Crossing.**

Norfolk argues that the Court should exclude any testimony that the "sight distance" was obstructed in the four quadrants of the Crossing because such testimony is irrelevant under Rule 402 and fails to assist the trier of fact in determining the issues that remain for trial pursuant to Rules 701 and 702. *See Bickley v. Norfolk & W. Ry. Co.*, 60 F. Supp. 2d 732, 736 (N.D. Ohio 1998) (stating the evidence regarding the obstructed view of other quadrants of a crossing, "standing alone," could not "lead a reasonable jury to find that the crossing was extra-hazardous"). In response, Plaintiffs argue that the sight limitations at the Crossing are relevant to whether the Crossing is ultra-hazardous. The Court declines at this stage of the litigation to prohibit this testimony without the context of specific questions asked during trial. For this reason, the Court **DENIES** this request in *limine.*

**11.** **<u>Any testimony that Norfolk requires workers to wear reflective vests and employees to activate emergency flashers or disable Norfolk's motor vehicles</u>**.

Norfolk seeks to exclude any testimony that it requires its roadway workers to wear reflective vests and its employees with disabled vehicles to activate their emergency flashers because such evidence is irrelevant under Rule 402 and fails to assist the trier of fact in determining the issues remaining for trial pursuant to Rules 701 and 702. In response, Plaintiffs argue that such evidence is relevant regarding Norfolk's duty to warn motorists. The Court declines at this stage of the litigation to prohibit this testimony without context to specific questions asked during trial. For this reason, the Court **DENIES** this request in *limine*.

**12.** **<u>Any testimony from Mr. Jenkinson regarding the hazards presented by the Crossing or by stationary railcars.</u>**

Norfolk asks the Court to prohibit any testimony from Mr. Jenkinson regarding the hazards presented by grade crossing or any opinions regarding the factors that lead to grade crossing accidents. The Court concludes, and Plaintiffs do not dispute, that such evidence should be excluded at trial. Accordingly, Norfolk's Motion in *Limine* is **GRANTED.**

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion in *Limine* ([Filing No. 95](#)) is **GRANTED in part and DENIED in part**, and Norfolk's Motions in *Limine* ([Filing No. 98](#)) are **GRANTED in part and DENIED in part**. An order in *limine* is not a final, appealable order. During the course of the trial, if the parties believe that evidence being offered is inadmissible or irrelevant, counsel may approach the bench and request a hearing outside the presence of the jury.

**SO ORDERED.**

Date: 4/17/2017

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jose M. Bautista
BAUTISTA LeROY LLC
jose@bautistaleroy.com

Steven L. Groves
GROVES POWERS LLC
sgroves@grovespowers.com

Richard D. Hailey
RAMEY & HAILEY
rich@rameyandhaileylaw.com

Mark Robert Molter
STUART & BRANIGAN LLP
mrm@stuartlaw.com

David A. Locke
STUART & BRANIGIN LLP
dal@stuartlaw.com

John C. Duffey
STUART & BRANIGIN LLP
jcd@stuartlaw.com